SYLVANUS BURNHAM, Appellant, v. JASON BUTLER and others,
Respondents.

The judgment of a justice of the peace should not be reversed by the County
Court, unless it clearly appear that the judgment of the justice could not
have been justified by the evidence.

So long as there has been legal evidence on both sides of the question adjudica-
ted upon, the County Court should not reverse the judgment, even if it arrive
at a conclusion as to the facts different from that adjudged by the justice.

APPEAL from the judgment of the General Term of the
fourth district, which affirmed the judgment of the county
court of St. Lawrence county, which reversed the judgment
of a justice's court.

In February, 1858, the appellant Burnham was traveling,
with a horse and cutter, returning home from town meeting
in the town of Potsdam. Behind him, traveling in the same
direction, was one Franklin Smith, also traveling with horse
and cutter; next behind Smith was Hiram Senter, in a
double sleigh and pair of horses; next behind Senter were
the two defendants, Judson Butler and Jason Butler, with
double sleigh and pair of horses; and in rear of the two
Butlers was the defendant Goodale, in a cutter with one
horse. These teams were all traveling in the same direction
northwardly, at a "good fair jog" (in the language of the
witnesses), and near to each other. The road was good width,
but was drifted with snowbanks. It does not appear how
many beaten tracks for traveling had been made in the snow
at the place of difficulty. At the time in question, the
defendant Goodale, with the hindmost team, turned out to
the right, to pass the Butlers next before him; Butlers see-
ing this attempt, turned their horses to the right to prevent
Goodale from passing, and in this way they drove nearly side
by side until they came by the side of Senter's sleigh, next
before Butler's, at a quick pace, breaking into a gallop;
Senter's team being skittish, or getting frightened, shied to
the left, these two teams being on his right, the left runner

of Senter's sleigh struck a snow bank, upset Senter's sleigh, Senter was dragged a short distance, he let go the lines, his horses escaped from him and ran away, and in running struck the plaintiff's cutter, destroyed the cutter, and hurt him and his horse, for which injuries he brought this action in a justice's court against the two Butlers and Goodale, by whose action it was claimed the injury was caused. The justice gave judgment against the defendants for $30, damages and costs. This judgment was reversed by the county court, and the judgment of the county court was affirmed by the Supreme Court.

*Dart & Tappan,* for the plaintiff.

*John H. Reynolds,* for the defendants.

POTTER, J.   Two points only have been discussed in this case, as arising upon the judgment given by the justice of the peace. The first is, whether there was evidence before the justice showing or tending to show, that the defendants had been guilty of negligence or want of care in the act which caused or contributed to the plaintiff's injury. It was one of the grounds upon which the county court reversed this judgment, that there was no sufficient evidence of such negligence. This makes it necessary to determine what rule is to be observed by the county court in a review of justices' judgments. I am not aware that there has been any change of the rule in this respect, since the case in the court of errors, of *Noyes* v. *Hewitt,* reported in 18 Wend., 141, which affirmed the rule as laid down by BRONSON, J., in *Stryker* v. *Bergin* (15 Wend., 491), and overruling the two cases of *Whitney* v. *Sutton* and *Columbia Turnpike Road* v. *Haywood* (10 Wend., 413, 425). That rule is, "that where on a trial in a justice's court there is evidence on both sides, and even where there is only slight evidence in support of the cause of action on which there is a recovery, the county court is not authorized to reverse the judgment, although such court may arrive at a conclusion upon the facts of the case, or the weight of evidence, different from that drawn by the

justice." This court, then, are bound to look into the evidence so far as to see if there is any or sufficient evidence to sustain the judgment of the justice. About the leading facts of the case, there is no material conflict, five teams with sleighs, some single, some double, were traveling in the same direction, and in close proximity, in the month of February; one of the defendants, with the team in the rear, turned out to the right and attempted to pass the team next before him, in which were the other two defendants; these two, seeing this effort made to pass them, turned their team also to the right, to prevent the passing; these two teams were then driving side by side with increased speed, one making the effort to pass, the other making the effort to prevent the passing; while these efforts were in progress, they had advanced side by side to the right side of the next sleigh forward of both, in which was Mr. Senter, thus bringing three teams side by side. This action frightened the team of Mr. Senter, which shied to the left, striking a snow bank, upsetting his sleigh, dragging him a distance, his horses escaped, ran with violence against the sleigh of the plaintiff, and demolished his sleigh, and did other injuries. This act which caused the injury, whether justifiable or not, originated with these three defendants. The justice must have attributed negligence or want of care to all these defendants, to justify a judgment against them. Unless there was evidence tending to prove such want of care, the judgment was erroneous. The county court was unable to see in this evidence any proof of want of care, inasmuch as the defendants were lawfully traveling upon a public highway, and had a right to increase their speed, if they desired to travel at a more rapid rate than did those before them; and, in the opinion of the judge, says, " there was abundant room for this purpose." Without controverting the proposition of law, upon the assumed facts, it is first proper to remark, " that whether there was abundant room for the purpose," is a most material *fact* in the case, and of itself is not a question of law, and the law that is applicable, is controlled by the finding of this fact.

If we are to assume that the justice also considered this

fact whether there was an abundance of room, and passed
upon it, we cannot regard this statement of the county judge
as having any weight, if we follow the rule we have supposed
applies.    The question here is, was there evidence sufficient
to sustain the finding of the justice that there was not suffi-
cient room, regard being had to the care which is required by
law of the defendants in this attempted act of passing ?    What
evidence had the justice before him on this question ?    Whether
there *was* room enough depends not upon the width of the
road as laid out, whether that be three, four or even six rods,
but how much of it, in its condition at that season, could be
traveled, or was practicable to travel; what the number of
its beaten or traveled tracks; what portion of the road was
filled and obstructed with snow drifts; what the depth of
snow ; what the depression of the tracks ; what the height
of the intervening ridges, pitch-holes, &c. ; all these are im
portant features in this case upon the question of care to be
observed by him who desires or attempts to pass.    The jus-
tice could not exclude from his consideration the evidences
that nature, that the season, that the elements had interposed,
nor such as the common experiences of life in the country
furnish.    The justice had a right to consider all these, from
the facts proved, that this was a north and south road; he
had a right to consider, then, from what all experience
teaches, that westerly winds fill such roads with drifts of
snow, and that such drifts would be on the left hand side
of such a road, in going north, and the fact proved that there
were such drifts, he had a right to consider that such drifts
would narrow the practical traveled passage way; and that
the snow drift that upset Senter's sleigh was proved to be on
the left hand side of this road.    Though the county judge,
in the month of June, when he reversed the justice's judg-
ment, did not see or consider this character of evidence as
being in the way, the legal presumption is that the justice
did consider it.    Experience also teaches, and the jus-
tice doubtless considered it, that turning out of deep snow
tracks requires care and caution to prevent upsetting.    If
the justice did consider all this, if he based his judgment

upon that consideration, if in view of these considerations, and the evidence, he held that the defendants were negligent, that they ought to have used more care, then his judgment upon this point must be sustained. There is evidence, strong evidence, tending to prove negligence or want of care. Such a judgment has a more reasonable, practicable and sound basis to sustain it than that which is based upon the non-existence of these facts. The county judge ignored them all. These facts and circumstances may have been entirely controlling with the justice in giving his judgment. That the county judge acted upon the opposite assumption of fact is clear; he decides as a question of fact, "that there was room enough," and upon this assumption held the law to be with the defendants. How the conclusion of law will be affected by this wrong assumption of fact will be seen in the next point.

2. If we are right as to the facts that may have been con-sidered by the justice, then the rule of law was correctly laid down in the dissenting opinion given in the Supreme Court, and it may be repeated here. The majority of the Supreme Court having adopted the views of the county judge, they, of course, and of necessity, adopted his facts, which was the basis of his decision. The case of *Kelsey* v. *Barney* (2 Kern., 429) I regard as controlling in this case. In that case the court says:

"The law imposes upon all persons using a highway the obligation to exercise *ordinary care* to avoid inflicting injury upon others. The degree of care which is thus imposed, is not capable of exact definition in words. It is sometimes said to be that degree of care which a prudent man exercises about his own affairs. This definition, and all similar ones, plainly do not greatly aid the inquiry as to the exact limits of the care to be exercised in any particular case. The diffi-culty is inherent in the subject. * * * It seems plain also, that the degree of *vigilance* which the law will exact as implied by the requirements of *ordinary care*, must vary with the probable consequences of negligence; and also, with the command of means to avoid injuring others, possessed by

the person on whom the obligation is imposed. Thus, upon a person walking in a country road, and upon another driving a spirited horse in a crowded thoroughfare, the requirement of *ordinary care* will impose very different degrees of *vigilance* to avoid inflicting injury upon others. Under some circumstances, *a very high degree of vigilance* is demanded by the requirement of *ordinary care.* When the consequence of negligence will probably be serious injury to others, and when the means of avoiding the infliction of injury upon others *are completely within the party's power, ordinary care* requires almost the utmost degree of human vigilance and foresight."

This in substance is the law as laid down by Sir WILLIAM JONES. In regard to the care or diligence which is recognized in the law, he says: "There are infinite shades from the slightest momentary thought or transient glance of attention to the most vigilant anxiety and solicitute. And in like manner there are infinite shades of default or neglect from the slightest inattention or momentary absence of mind, to the most reprehensible supineness and stupidity; and these are the omissions of the before mentioned degrees of diligence, and are exactly correspondent with them." Jones on Bail, 5–8. The law of the road as to persons traveling in the same direction, is laid down by Angell as follows: "If there be not sufficient room to pass on the one side or the other, it is the duty of the foremost traveler to furnish it *on request* made, by yielding an equal share of the road, if that be adequate and practicable; if not, the object must be deferred until the parties arrive at ground favorable to its accomplishment. Angell on Highways, § 340. In the case of *Vandeburgh* v. *Truax* (4 Denio, 464), BRONSON, Ch. J., said, "when one does a legal act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable in some form of action for all the consequences which may directly and naturally result from his conduct. (See also *Scott* v. *Shepherd*, 2 W. Bl., 892; *S. C.*, 3 Wils., 403.)

The opinion of the learned county judge does not adopt this rule, nor the law as found in the cases cited. He dis-

cusses plausibly the right of parties in the abstract; and is right, if circumstances did not control as against an absolute unvarying principle. Now I apprehend that *ordinary care,* as between two teams traveling on the highway, the one desiring to pass the other, upon a good, wide, improved road, in the *summer* season, according to the law as we have taken it from *Kelsey* v. *Barney,* is an entirely different rule from that of teams traveling in company in the *winter* season, over slippery, contracted and drifted roads, with sudden, abrupt and uneven surfaces. The learned county judge has discussed the law as if there was a uniform rule under all circumstances. His reversal of the judgment of the justice, gives the justice no credit for the considerations that may have controlled his judgment, and "that the defendants have the command of means to prevent the injury," and did not exercise that vigilance which amounted to ordinary care under the whole circumstances of the case.

It is possible, nay probable, that the justice whose decision he reversed adopted the true rule, and in the absence of knowledge of the rule actually adopted (if he adopted any rule at all), the law comes to the aid of the judgment he has given, and demands that the appellate court shall give to his judgment every reasonable construction to sustain it, if from the evidence it was possible for him to have given such a judgment as he did give. We have shown that there were facts in the case, with circumstances attending them, which brought it within the province of the justice to say whether the defendants, and each of them, used all the precaution and care demanded of them under the circumstances. This being so, we are to presume his judgment was given upon the right ground, and it ought, therefore, to stand. I think the judgment of the Supreme Court and of the county court ought to be reversed, and that of the justice affirmed.

DENIO, Ch. J., DAVIS, DAVIES and BROWN, JJ., concurring.

WRIGHT, J. (dissenting.) This is an appeal from a judgment of Supreme Court affirming a judgment of the St.

Lawrence County Court, which reversed a judgment in favor of the plaintiff rendered by a justice of the peace.

The action before the justice was to recover damages alleged to have been sustained by the plaintiff in February, 1858, by being run upon, in a public highway, in the town of Potsdam, by the horses of one Senter, which it was alleged had been frightened, and caused to run away, and over the plaintiff, by the misconduct of the defendants. These allegations were put in issue by the defendants; and on the trial the following facts were disclosed:

Towards evening on the day of the town meeting in Potsdam, in February, 1858, the parties were returning home along a public highway. The plaintiff was ahead with a horse and cutter, and behind him were the following teams: 1st. Franklin Smith, in a cutter; 2d. Hiram Senter, in a double sleigh; 3d. Jason Butler and Judson Butler, the defendants, with a double team; 4th. The defendant Goodale, with a horse and cutter; and 5th. Charles Bowker, in a cutter; and all were trotting along at a "common jog." When they came opposite what the witnesses called "Marcus Hough's place," the defendant Goodale turned out to the right for the purpose of driving faster, and passing one or all of the forward sleighs. The defendant Jason Butler said to Judson his brother, who was driving, not to let Goodale go by. At this point the road was wide enough for three or four teams to go abreast. Judson Butler turned out to the right also, and quickened the speed of his team, and came up nearly by the side of Senter's team, Goodale being nearly by the side of Butler's sleigh. They were then going at a "good ordinary fair trot." As Butler's team came up, Senter's was started, and sprang aside and ahead; and his cutter struck a snow drift and upset. The Butlers and Goodale at once held up. Senter was dragged a short distance, when he let go his lines, and his horses ran for about forty rods, and struck the plaintiff's cutter, destroying it, and injuring him.

These were the facts of the case as detailed by the plaintiff's witnesses. The justice refused to nonsuit the plaintiff,

and gave judgment in his favor for $30 and costs. This judgment was reversed by the county court, which reversal was affirmed by the Supreme Court.

On the case as made by the plaintiff himself, I cannot see how the defendants were legally responsible for the injury. They were guilty of no unlawful act, or of any act of negligence which caused or contributed to produce it. If any of the parties were blamable it was Senter, for his carelessness and inattention in the management of his horses. The defendants certainly had the right, one or all, to turn out and pass the teams ahead; and there was not the shadow of evidence proving or tending to prove that in the attempt there was any want of care or caution. The road, at the point where they turned their teams to the right with the view of passing, was wide enough to allow four or five teams to go abreast; they turned entirely out of the traveled track; they drove at a proper and moderate rate of speed, and in doing so they made no unusual noise calculated to frighten the other teams, or by reason of which a team would ordinarily be frightened; they did not run upon or against Senter's team or sleigh; or go by him; and when coming near him, and seeing his horses restive they at once held up. At this juncture, by the neglect or inattention of Senter, he allowed his horses to sheer to the left so that the off horse was going in the nigh one's path, and thus they were suffered to go until the sleigh struck a snow drift out of the traveled track, upsetting it, and the horses running off, and the plaintiff being in the way, was run against by them, and received the injury complained of.

In order to make a party responsible for an injury, on the ground of negligence, it must appear that the negligent act directly caused or contributed to produce the injury complained of. Here it is impossible to point out anything done by the defendants which was careless or negligent. The place was a proper one to pass the teams ahead, and it was attempted at a proper rate of speed, and with all due care in the management of the horses. The mismanagement and fright of Senter's team, which was the cause of the plain-

tiff's injury, was not the necessary or probable result of what was done by the defendants.

It is claimed that it was a question of fact, within the exclusive province of the justice, to determine whether the right to pass teams, if the defendants had any such right, was under the circumstances prudently exercised. This is not so. To pass was not unlawful; there was no wrong in the act *per se*, and the evidence was wholly uncontradicted in respect to the circumstances under which it was attempted. It was not for the justice to speculate upon the question of negligence, as the evidence before him neither proved nor tended to prove it.

I think the judgment of the Supreme Court should be affirmed.

PORTER and CAMPBELL, JJ., concurring.

Judgment of Supreme Court reversed, and judgment of the justice affirmed.