Wright *v.* Maseras.

---

## WRIGHT *vs.* MASERAS.

The affidavit on which a warrant is applied for, in a justice's court, need only state the facts and circumstances within the knowledge of the plaintiff or person applying, as the grounds of his application. An affidavit stating that the defendant is a non-resident, and has obtained goods under false pretences, is sufficient.

A conversation, in the presence of the defendant, a Spaniard, who could not speak English, between the plaintiff, who could neither speak nor understand the Spanish language, and the friend and banker of the defendant, who could speak English, and who during such conversation repeatedly talked with the defendant in some foreign language, appearing to translate to him the plaintiff's remarks, and professing to speak for the defendant in reply, is admissible in evidence against the defendant.

If the defendant, through his interpreter, friend and banker, understood or was made to understand the plaintiff's statement and claim against him, then the conversation is to be used to the same effect as if the plaintiff had addressed him in Spanish, or any other language that he did understand. It is only important to know that he understood it.

If there is, in such a case, evidence sufficient to sustain the conclusion of the justice that the defendant understood the conversation of the plaintiff, and the object of his visit, a judgment in favor of the plaintiff will be sustained; especially where the defendant neglects to avail himself of the opportunity, by his own oath, to explain the transaction and show that he did not understand the conversation.

---

Wright *v.* Maseras.

---

The pendency of another action, before a different justice, for the same cause of action, must be set up in the answer; otherwise advantage cannot be taken of it.

The pendency of another action cannot be proved by the testimony of witnesses; that not being the best evidence.

THIS was an action for wrongfully obtaining and withholding thirty-two dollars in money, the property of the plaintiff, and for wrongfully issuing and passing upon the plaintiff a counterfeit fifty dollar bill, and declaring the same to be genuine; and was originally commenced in a justice's court, where the plaintiff recovered a judgment of $32 damages and $5 costs. The defendant appealed to the Saratoga county court, where the judgment was reversed.

The plaintiff then appealed to this court.

*A. Pond,* for the appellant.

I. The justice did not err in overruling the objections made to the affidavit and bond upon which the warrant was issued. 1st. The application of the plaintiff for the warrant fully sets out a cause of action in favor of the plaintiff against the defendant *in tort,* and not arising out of contract. The facts are sufficiently stated therein, and entitle the plaintiff to a warrant. (2 *R. S.* 244, § 17, *Edm. ed. Pope* v. *Hart,* 35 *Barb.* 630. *Waters* v. *Whittemore,* 22 *id.* 593.) In *Pope* v. *Hart,* above cited, Judge BALCOM says, "I think all a person need state in his affidavit for a warrant, as to having a cause of action *for a tort or wrong,* is that *he believes* he has a cause of action against the defendant, and then set out when and how he claims it arose, so that it may be seen to be *ex delicto.*" If these views are correct, the affidavit authorized the justice to issue the warrant in this case. 2d. It was not necessary for the affidavit made to obtain the warrant, to state that the plaintiff was a resident of the county; nor was it essential to state therein where he resided. (*a.*) The statute allows the

warrant against a *non-resident*. The affidavit shows the defendant to be a *non-resident*, and is therefore sufficient in that respect. (2 *R. S.* 244, § 17, *Edm. ed. Whitney* v. *Shufelt*, 1 *Denio*, 592.) (*b.*) In respect to what the affidavit should contain, the statute in relation to warrants is substantially like that in regard to attachments. The statute requires, in order to entitle a party to a warrant, that he "shall, by affidavit, state the facts and circumstances, within his knowledge, showing the *grounds of his application.*" (2 *R. S.* 244, § 19, *Edm. ed.*) In regard to attachments, the statute provides that the application shall be in writing and accompanied by the affidavit of the creditor, specifying, among other things, "the person in whose behalf application is made, *and the grounds upon which the application is founded.*" (2 *R. S.* 246, § 28, *Edm. ed.*) It will be seen, therefore, that the language of the two provisions is almost identical. And in regard to attachments it is expressly decided that it is not necessary to state, in the affidavit accompanying the application, *the place of residence of the plaintiff.* (*Van Kirk* v. *Wilds*, 11 *Barb.* 520, 525.) This applies equally well to the case of a warrant. The *place* where the plaintiff resides is not made by the statute, in either case, one of the grounds of the application, but in both the *non-residence* of the defendant is. That essential fact having been stated, the affidavit was manifestly sufficient in that respect. (*c.*) If the affidavit of the plaintiff was sufficient, so also was the *bond.*

II. Neither did the justice err in rendering judgment for the plaintiff upon the evidence. 1st. The proof was uncontradicted that the $50 bill paid to the plaintiff by the defendant was *counterfeit.* The only question remaining is, did the defendant pass the bill, *knowing* it was bad ? 2d. The evidence warranted the justice in finding the fact that the defendant did know the bill to be bad, when he passed it. (*a.*) By denying he let the plaintiff have the

$50 bill when offered back to him, but not pretending to deny it on the trial, as he might have done if the denial was true. This authorized the justice to find the defendant guilty of a falsehood. (*b.*) If he did pass the $50 bill to the plaintiff, and it was counterfeit, both of which facts are undenied, then by not exculpating himself, as he might have done, from the charge of passing it to the plaintiff with actual knowledge of its bad character, having the right to testify in his own behalf, the presumption of fact, if not of law, is that the defendant did know the bill was counterfeit when he passed it. The defendant had the right to testify in his own behalf as to whether he knew the bill was bad, and whether he intended to cheat and defraud the plaintiff by passing the bill to him, and in taking good money for it. (*Pope* v. *Hart,* 35 *Barb.* 630.) It was competent for the justice to find from the foregoing circumstances, or either of them, that the defendant knew of the bad character of the bill, and intended to defraud the plaintiff by passing it to him. In such cases, slight circumstances are sufficient to sustain a decision of the justice on the question of fact; and certainly where the defendant is pressed with circumstantial evidence, as he was in this case, and has the power to explain and exculpate himself from the charge, if untrue, as he had here, the omission to explain makes the proof, otherwise weak, strong against him. (*Bogert* v. *Morse,* 1 *Comst.* 377. *Jewett* v. *Banning,* 21 *N. Y. Rep.* 27. *The Utica Ins. Co.* v. *Badger,* 3 *Wend.* 102. *Bush* v. *Lathrop,* 22 *N. Y. Rep.* 550. *Arent* v. *Squire,* 1 *Daly,* 347, 358. *Byrd* v. *Hall,* 3 *Keyes' Rep.* 646.) In *Bush* v. *Lathrop,* above cited, where the question was whether the defendant was a *bona fide* purchaser or not, Judge Denio says, " the defendant was himself a witness in his own behalf, and might have said, if the truth was so, that he purchased without notice of any condition in the assignment to Preston, and in the belief that there was no flaw in his title to the securities, and

Wright *v.* Maseras.

that his own purchase was absolute, and without any understanding with Smith and Newton that the money should in any event be returned. Since the law allows him to swear in his own behalf, I think he ought to have denied notice, whether inquired of by plaintiff or not." In *Arent* v. *Squire,* also above cited, which was an action against the defendants as warehousemen, charging them with a loss of the property through negligence, the question was whether it was incumbent upon the defendants to exculpate themselves, by their own testimony, from the presumption of loss through their own negligence. Judge Daly remarked: "They (the defendants) proved that the two casks were stored in a loft, to which nobody had access but themselves and their employees. If that were the case, they should have gone, themselves, upon the stand and testified that they had no knowledge of the manner in which the gin had been extracted from the casks, and brought their employees also to testify that they knew nothing of the way in which it had been taken," and the judgment of the justice against the defendants was affirmed. This language applies in full force to this case. (*See Byrd* v. *Hall,* 2 *Keyes' Rep.* 646.) But it is sought to avoid this result by claiming that the defendant was a Cuban, and did not understand the English language. But here, too, the defendant is at fault. There is not a particle of evidence to show that the defendant did not understand the English language. Moreover, if a man does understand English well enough to pass a counterfeit $50 bill, he understands it well enough to take it back again, or to swear he don't understand. But he did understand. The conversation he had with his Spanish friends shows he understood well enough; and it is a question of fact as to whether he understood or not; and certainly, in the absence of any denial, under oath, that he did understand, the decision of the justice on the question is conclusive. (*Camalier* v. *Palmer,* 10 *Allen,* 539.)

III. The evidence put in by the defendant, to show the attachment proceedings, was improperly admitted, and, though received, was wholly immaterial. 1st. The primary evidence to show proceedings in an action in a justice's court, is the docket of the justice, provided the justice is neither dead nor absent. (2 *R. S.* 278, § 245, *Edm. ed. Pratt* v. *Peckham*, 25 *Barb.* 195. *Hard* v. *Shipman,* 6 *id.* 621.) Neither the statute or common law makes an acting constable an officer to certify and authenticate justice's records, or copies of papers to be used in evidence on the trials of actions in justices' or other courts. 2d. There is no evidence that the attachment was ever returned by the constable to the justice issuing it; and if it was not, the justice never acquired any jurisdiction over the cause or parties. It is the return of the constable which alone gives jurisdiction. (*Case* v. *Redfield,* 7 *Wend.* 398. *N. Y. and Erie Railroad* v. *Purdy,* 18 *Barb.* 574. *Sagendorph* v. *Shult,* 41 *id.* 102.) There was no evidence, therefore, that the attachment proceeding was pending at the time of the commencement, or at the time of the trial, of this action. 3d. The present action was for an entirely different and distinct cause of action from the attachment suit, and hence the latter is no bar to this action.

*L. B. Pike,* for the respondent.

I. The complaint sets forth obtaining and withholding, wrongfully, $32 in money. 2d. Wrongfully issuing and passing a $50 bill, declaring the same to be genuine; and, 3d. For obtaining goods under false pretences. Certainly the defendant obtained no goods under false pretences. The goods were sold prior to the payment, and no representation was made in relation to them. The $32 was paid back as part of the $100, over the amount of bill of goods, and no representation was made, or word spoken, at the time of payment, and no fraud can be predicated of this, except as it forms a part of the transaction and de-

Wright *v.* Maseras.

pending upon the fraudulent uttering of the $50 counterfeit bill; and not then, for the recovery, if anything, must be based upon and be for the $50. There is no authority for any other sum than $50.

II. There is no evidence of any suspicion by the defendant that the money paid was not good; nor is there any evidence of a single act or word of his, pointing in that direction, before or after the uttering of it. To maintain this action (*tort*) there must have been, at the time of uttering the bill, a fraudulent intent. Knowledge, or at least suspicion of its character, was necessary to charge him with the *tort*. Here not a word was spoken, and the case is absolutely barren of the slightest evidence that the defendant contemplated any wrong. Even if the defendant had refused to accept a return of the money, after payment, this could not charge him and make that wrong which was originally innocent; and for only one purpose would evidence of his refusal be proper in an action of *tort*, to wit: His reasons given for not accepting a return might show an original intent to defraud. In this case it will be observed that there is not one word of evidence of a single expression to or by the defendant relating to this bill, at any time, or anywhere.

III. The justice erred in denying the motion of the defendant to strike out the evidence of conversation between the plaintiff, Guezala and Cabalos. Objection could not be taken when the conversation was given, because it was in the presence of the defendant; but so soon as it was discovered that the defendant could not understand a word of it, either because of his ignorance of the language used, or because he was dead or insensible, a motion was proper, and in this instance should have been granted. The theory upon which conversation between others in presence of the defendant can be given, is that the defendant hears and understands such conversation, and, by not disputing it, admits its truth in all cases when he is bound to speak.

In this case he could not, as the proof shows, understand a word, and there is not the slightest evidence that a word of it was communicated to him. He did not speak English, and the plaintiff did not speak Spanish; and what conversation Cabalos and Guezala had with the defendant, the proof does not show. The evidence was clearly hearsay, and should have been stricken out.

IV. With the evidence stricken out, the case then stands, that "A." pays "B" $100, in liquidation of a debt of $68, and receives $32 in return. It turns out that $50 of the money paid is bad, and without any further evidence, "B" may maintain an action *in tort* against "A." and recover the $32. The proposition is enough, for any court except the one before which this was tried.

V. The justice erred in rendering judgment in this action when a suit was pending before another justice for the very same cause. Judgment of discontinuance should have been entered in the attachment case, before trial, or at least before judgment in this action. (10 *N. Y. Rep.* 500.) But instead of that, as appears by the case, both suits were continued. The proof of former suits pending for same cause, is to be found in the plaintiff's testimony, and the proceedings, together with the return of the constable, showing the property attached. No objection was made to any of this testimony on the ground that it was not pleaded; and this was a waiver of any such objection. If such objection had been made, the defendant would have obviated it by amendment, and the plaintiff cannot take it here for the first time. (*Merritt* v. *Seaman,* 6 *Barb.* 330.) It seems like rank injustice, and a total disregard for all rules of law, that a man innocent of wrong shall be arrested on a civil warrant, and have judgment pass against him in *tort,* thus impeaching his character for honesty; but it is something worse, that two suits shall proceed at the same time, and a double recovery be had. From the evidence it appears the plaintiff holds $100 in his attachment

suit, and the defendant's body in the suit by warrant for the same cause. The plaintiff should have offered to discontinue the first suit.

VI. The affidavit upon which the warrant was founded was insufficient to authorize the issuing of such warrant.

*By the Court,* POTTER, J. The undisputed facts in this case are, that the plaintiff in this case, being a merchant tailor at Saratoga Springs, had sold and delivered to the defendant a bill of clothing, amounting to $68. That a few days afterwards the defendant came to him and offered to him two $50 bills, purporting to be United States money, in payment of said clothing. That the plaintiff thereupon gave the defendant $32 in return, in exchange for said $50 bills. And one of said $50 bills being counterfeit, was returned by the plaintiff to the defendant, and the defendant refused to make good the error. The defendant being a Cuban Spaniard, and unable to speak English, the conversation, on the return of the bill by the plaintiff, was conducted by the defendant's banker, one Cabalos, who was also a Cuban, and who could speak English, in the presence of the defendant. During this interview, at the return of the counterfeit bill, when the plaintiff talked to Cabalos, the defendant and Cabalos conversed together in a language that the plaintiff did not understand, but Cabalos told the plaintiff that the defendant did not pay him the bill; and when the plaintiff asked him to take the bill back, Cabalos made the reply with a gesture, putting up his hand and turning his head on one side. If there was no legal objections to prevent it, the justice was authorized from the facts, and the reasonable conclusions to be drawn from the circumstances, to give the judgment he did, for wrongfully obtaining and withholding $32 from the plaintiff, according to the first count in the complaint.

We proceed, then, to examine the legal objections to the recovery. The first objection, that the affidavit on which the warrant was issued was insufficient, I do not think is well taken. The nineteenth section of the justices' act does not specify what particulars it shall state, but only that it shall state the facts and circumstances within the knowledge of the plaintiff, or person applying for the warrant, as the grounds of his application, whereby the justice may better judge of the necessity and propriety of issuing the warrant. The affidavit did state such grounds, and satisfied the justice; and I think any reasonable mind would be satisfied, when it is stated that the defendant was a non-resident, and had obtained goods under false pretenses. The statute does not require the affidavit to state that the plaintiff is a resident of the county, as it is claimed.

The important, and as I think the main question in the case, arises upon the motion of the defendant's counsel before the justice, to strike out the plaintiff's testimony relating to the conversations in the presence of the defendant, with Guezala, a Cuban friend of the defendant, who could speak English, and with Cabalos, another Cuban friend, and the banker of the defendant, who could also speak English. The *plaintiff* could neither speak or understand the Spanish language. The interview was at the time the plaintiff offered to return the counterfeit bill. The testimony is, that the plaintiff first approached Guezala, the defendant sitting by his side; he showed Guezala the $50 counterfeit bill, and told him that the defendant had just paid him that bill, and that it was counterfeit; Guezala referred the plaintiff to Cabalos, who was also sitting beside the defendant, and gave the plaintiff to understand that Cabalos was the defendant's banker. The plaintiff then applied to Cabalos, showed him the bill, and repeated the statement that had been made to Guezala. Cabalos replied that the defendant did not let him have

Wright *v.* Maseras.

the bill. During the time, Cabalos had a conversation with the defendant, in a language the plaintiff could not understand. Cabalos then gave as a reason why the defendant did not pass the bill in question to the plaintiff, that all the money the defendant had came through him, Cabalos. The plaintiff then repeated that the defendant did pay the bill to him, and asked him (it is uncertain whether "him" means the defendant or Cabalos) to take it back. Cabalos replied with a gesture. He put up his hand and turned his head on one side. Immediately after the conversation of Cabalos with the *defendant*, the defendant took out a package of money, and showed it to Cabalos. This testimony, of the conversations of the plaintiff with Guezala and Cabalos, was moved to be stricken out, on the ground that they are hearsay; that they are not conversations of that character that the defendant can be bound by them; or held responsible for them; which motion the justice denied. Had this motion been confined to an objection to the conversation with Guezala only, I think the justice should have stricken it out. No connection is shown between Guezala and the defendant. He (Guezala) did not assume to be acting for the defendant, or claim a right to speak for him; nor does it appear that he communicated to the defendant what the plaintiff said to him; but, on the contrary, referred him to Cabalos, the banker and friend of the defendant. The objection, however, is joint, and includes both Guezala and Cabalos. If the objection was not good as to both, it was properly denied. Besides, as nothing was said to Guezala that was not repeated to Cabalos, this conversation with Guezala was harmless, and it could have no influence upon the mind of the justice. The question then is, should the conversation with Cabalos have been stricken out as testimony? This should be determined, not as a question of law, but as a question of fact. If the defendant, through his interpreter, friend and banker, Cabalos, understood, or

was made. to understand, the plaintiff's statement and claim that he had passed to him a counterfeit bill, and that he demanded its redemption, then the conversation is to be used to the same effect as if the plaintiff had addressed him in Spanish, or any other language that he did understand. It is only important to know that he understood it. It would seem that the justice believed he understood it; otherwise he could not, or rather ought not to have rendered a judgment for the plaintiff. If he did understand it, the justice was right. Is there, then, evidence sufficient to sustain this conclusion of the justice? If there is, then we must apply the rule adopted in *Burnham* v. *Butler*, (31 *N. Y. Rep.* 486,) which is "to give the judgment of the justice every reasonable construction to sustain it, if from the evidence it was possible for him to have given such a judgment as he did give." I think it was possible, nay, reasonable, for the justice to draw the conclusion of fact, from the conduct of the defendant, that he understood the conversation of the plaintiff with Cabalos, and the object of the plaintiff's visit. The plaintiff had the counterfeit bill in his hand; the defendant knew he had passed to him a $50 bill. Cabalos spoke to the defendant in language that he understood, and immediately the defendant took out his package of money and showed it to Cabalos; Cabalos was his banker, and had furnished him with his money. The circumstances are strong enough to establish the conclusion that the defendant knew and understood this conversation. · The inference, at all events, was strong enough to put him on the defense. He could have been sworn, and through an interpreter could have acquitted himself of all wrong intent, if his transaction was honest. He was in the condition that the omission to defend himself added to the force of the presumption against him. (*Bush* v. *Lathrop*, 22 *N. Y. Rep.* 550.) He did not attempt to show that he did not understand the conversation.

Wright *v.* Maseras. ·

There is still another point raised by the defendant, as a ground of error in the judgment before the justice, to wit, that another action was pending before another justice, for the same cause of action; and that this was proved before the justice.   To this it may be answered : 1st. That the *pendency* of another action should have been set up in the answer; which was not done.   There was no issue of that kind in the case to be tried.   2d. The proof of another action, though admitted by the justice, against objection, was not the best proof required for that purpose; and, for the purpose of proving the pendency of another action, its admission was error.   3d. If the evidence had been admissible, and an issue of that kind had been joined or set up, the proof failed to establish the pendency of an action at that time.   It would only have proved the commencement of an action—not its present pendency.   For the purpose of impairing the weight of the plaintiff's evidence, perhaps the proof of the preliminary proceedings upon the attachment, with application and affidavit of the plaintiff, was admissible.

Upon the whole case, I have come to the conclusion that the judgment of the justice should be sustained, and that of the county court reversed.

[SCHENECTADY GENERAL TERM, April 6, 1869.   *Rosekrans, Potter* and *Bockes* Justices.]