HANRAHAN v. COCHRAN et al.

(Supreme Court, Appellate Division, Fourth Department. December 15, 1896.)

1. NEGLIGENCE—PROXIMATE CAUSE—PROVINCE OF JURY.

It was a question for the jury whether two persons racing their horses together on a crowded street, in violation of Pen. Code, § 147, which prohibits racing within a mile of a place where a court is sitting, and of an ordinance prohibiting fast driving, were guilty of negligence which was the proximate cause of their running against one attempting to cross in front of them at a street intersection.

2. SAME—EVIDENCE—RELEVANCY.

In determining whether two persons were negligent in racing their horses together on a street, the jury may consider the fact that, in doing so, such persons were violating the law and an ordinance.

3. SAME—JOINT LIABILITY.

Two persons unlawfully racing their horses together on a street are jointly liable to one who attempted to cross in front of them, and who, without fault on his part, was run against by one of them, and injured, where but for the race there would have been no accident.

4. SAME—STREET ACCIDENT—CONTRIBUTORY NEGLIGENCE.

Deceased was not guilty of contributory negligence, as a matter of law, in attempting to drive across a street on which others were racing their horses, at its intersection with another street, though he might have seen the approach of the racers, and have heard the shouting of one of them in time to have stopped and avoided being run against by them, where permanent objects obstructed his view in the direction from which the racers came until he had passed beyond the curb, and the street on which the racers were was crowded with vehicles and onlookers, and deceased entered the street with his horse at a walk, and afterwards increased its pace so as to cross quickly, but was struck when at the center of the intersection.

5. SAME—JUSTIFICATION.

Where a person racing with others on a street, in violation of law and an ordinance, ran against and injured one attempting to cross the street, it was not a justification of the wrong that the street had frequently been raced upon by others, with the tacit consent of the city officials.

6. SAME—EVIDENCE OF NEGLIGENCE.

One who, in attempting to cross a street, was run against by persons racing their horses thereon, in violation of law and an ordinance, was not shown to be aware of the fact that the street was frequently raced upon with the tacit consent of the city officials, merely by evidence that he lived in the city, and sometimes crossed the street.

Appeal from circuit court, Onondaga county.

Action by Margaret Hanrahan, as administratrix of Matthew Hanrahan, deceased, against George Cochran, impleaded with Charles W. Knapp. From a judgment of nonsuit as to defendant Cochran, plaintiff appeals. Reversed.

The trial proceeded as to the defendant Knapp, against whom the jury rendered a verdict of $5,000. The action was brought by the administratrix to recover damages for injuries resulting in the death of Matthew Hanrahan, the husband of the plaintiff, occasioned by his being run into while driving across Genesee street, in the city of Syracuse, by a horse and sleigh passing along Genesee street, while the defendants were racing their horses on that street. Genesee street is one of the oldest streets in the city, running easterly and westerly through the heart of the city, and occupied extensively for business and travel. Plum street intersects Genesee street, running north and south; and, 775 feet west of Plum street, Genesee is crossed by Leavenworth avenue, a street parallel with Plum street. At the time of the injury to the intestate, Genesee street was paved with asphalt

pavements 40 feet wide, between the curbs. The deceased was attempting to cross Genesee street, on Plum, going south. On the north side of Genesee street, extending from Plum to Leavenworth avenue, there were two rows of trees, the first row about 5 feet from the curb on Genesee, and the other 19 feet from the curb. Between these rows of trees was the sidewalk. On the north west corner of Plum street, at its intersection with Genesee, was a large residence, with a picket fence 6 feet high, so that persons passing along Plum south, to cross Genesee, their view would be very much obstructed west on Genesee until they had reached beyond the curb, and into the street itself. At the time of the accident, the sleighing was fine. Sleighs were passing up and down Genesee, and a large number of people stood on both sides of Genesee, and in the gutters, at the intersection of Plum and Genesee, watching what was transpiring upon the streets. The deceased had a horse and a delivery sleigh, the bottom of the seat of which was about 34 inches from the ground, and his rig, horse and sleigh, was about 16 feet long. The principal witness in the case discovered the deceased attempting to cross Genesee from Plum, and saw his horse emerging through the crowd, apparently upon a walk; and, when he found himself upon the street, he quickened the horse's pace, glancing, as the witness thought, toward the west, with the obvious purpose of getting across the street as soon as possible. While in about the center of the street, his rig was struck by the horse and cutter of the defendant Knapp, and the result was that the deceased was fatally injured. The horse and cutter of the defendant Cochran went by the rear of the deceased's sleigh, the testimony showing that, when he did so, the space between his rig and the rear of the deceased was from 2 inches to 2 feet. The defendants were driving from the west to the east; between Leavenworth avenue and Plum street. They were racing their horses to the fullest possible extent that the animals were capable of, and going at a rate of a mile in less than three minutes; and, when they approached a point within about 150 feet of where the intestate was struck, they were going, in the language of the witnesses, "neck and neck," and Cochran was shouting, to the extent of his voice, to his horse to make it go faster. They were side by side, or nearly so, at the time of the accident, their two sleighs being from 2 to 4 feet apart. The testimony of the defendant Cochran taken before a coroner's jury was read in evidence, which disclosed that when he was about halfway between Leavenworth avenue and Plum street, a distance of over 300 feet, he discovered the deceased attempting to cross Genesee from Plum street. The accident occurred between 4 and 5 o'clock in the afternoon of February 16, 1895, and the intestate died on the 18th. The accident occurred within half a mile of the courthouse in Syracuse, where a court was actually sitting.

By section 147 of the Penal Code it is made a misdemeanor for a person to be concerned in any racing, running, or other trial of speed between horses or other animals within one mile of the place where a court is actually sitting. There was also in force at that time an ordinance of the city of Syracuse which was as follows: "Any person who shall immoderately drive or ride any horse or other animal, whether attached to a private or public ambulance or other vehicle, in any avenue, street, alley or lane in the city, shall be subject to a fine of not less than five dollars nor more than fifty dollars, or to imprisonment in the penitentiary in the county for not less than ten days nor more than thirty days."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. T. Benedict, for appellant.
William S. Jenney, for respondent.

WARD, J. The defendants, at the time of the accident that resulted in the death of the plaintiff's intestate, were engaged in the commission of an unlawful and criminal act; and in Scott v. Shepherd, 2 W. Bl. 892 (the famous Squib Case), De Grey, C. J., says "that every one who does an unlawful act is considered the doer of all that follows." While the trespass that resulted in the death of Hanrahan was not willful or intentional on the part of the defendants,

nevertheless it was a question for the jury to determine whether the act of fast driving, in which both defendants participated, side by side, in a crowded street, in a great city, under the circumstances of this case, was not negligence on the part of these defendants, and of each of them, which was the proximate cause of the death of the decedent. The fact that the defendants were violating the law and an ordinance of the city was proper to be submitted to the jury upon the question of the defendants' negligence. Jetter v. Railroad Co., 2 Abb. Dec. 458; Knupfle v. Ice Co., 84 N. Y. 488, and cases there cited.

It is claimed by the respondent, and such seems to have been the conclusion of the trial court, that, because the sleigh of the defendant Cochran did not actually collide with that of the deceased, he was not liable for the injury which resulted from the collision. We cannot concur in this view. From the statement of facts above given, it will be seen that these defendants were acting together and in concert in this race. It was the race that created the condition that resulted in the accident. But for this race the jury may well have found, and we think we are justified in saying, from the evidence, that the injury would not have occurred; so that the defendant Cochran contributed, by being engaged in this unlawful and forbidden performance, under the circumstances of this case, directly to the accident. Assuming that these two men had been upon trial for manslaughter for the negligent killing of the deceased, would it have been of any consequence that the blow that was impelled by the act of both of these defendants was only actually struck by but one of them? We assume not. If an act done cause immediate injury, whether it be intentional or not, trespass lies; and, if done by the co-operation of several persons, all are trespassers, and all may be sued jointly, for one is liable for the injury done by all, but it must appear that they acted in concert, or that the act of the one sued ordinarily and naturally produced the act of the others. Guille v. Swan, 19 Johns. 381, and cases cited; Jung v. Starin (Super. Ct. N. Y.) 33 N. Y. Supp. 650; Barrett v. Railroad Co., 45 N. Y. 628; Colegrove v. Railroad Co., 6 Duer, 382, affirmed 20 N. Y. 492; Slater v. Mersereau, 64 N. Y. 138; Burnham v. Butler, 31 N. Y. 480; Pollett v. Long, 56 N. Y. 200; Scott v. Shepherd, supra. In Burnham v. Butler, supra, a number of teams were traveling upon a highway in St. Lawrence county, attached to sleighs, in which the owners were returning from a town meeting. The defendants occupied the two rear sleighs. They got to racing. The hindmost team turned out to pass the team next before it. The last-mentioned team sought to prevent the passage, and hence the race. They raced side by side until they came along by Mr. Center's sleigh, which was the third sleigh from behind, and Center's horse, getting frightened, shied to the left, and struck a snow bank. Center was dragged a short distance. His horse ran away, and struck the plaintiff's cutter, and injured his horse and cutter. Held, that the racers were responsible for this injury to the plaintiff, upon the principle as has been asserted in the cases cited.

We must hold that these defendants, under the circumstances of the case, in racing their horses, should be held to a degree of vigilance and care commensurate with the dangers of the situation. They were cognizant of the facts. They knew that pedestrians and owners of vehicles, in the exercise of an undoubted right, would be passing along Genesee street and crossing from streets in front of them, and they might reasonably have anticipated some such accident as did occur; and yet the defendant Cochran, in face of the facts, and of the further fact that he saw the deceased attempting to pass along in front of him on Plum street, did not abate the speed of his animal, but urged it to further exertion.

In behalf of the defendant Cochran, it is earnestly contended that the trial court was justified, as a matter of law, in taking the case from the jury, upon the ground that the deceased was guilty of contributory negligence. From the record before us we assume that the same objection was urged at the trial as against the plaintiff's recovery against the defendant Knapp, as the objection would have been equally fatal in his case as in the case of Cochran; but the case was sent to the jury in the Knapp case, and we assume that the learned trial judge held that it was a proper case for the jury upon the question of contributory negligence. While it was the duty of the deceased not to plunge into a manifest danger upon a highway, it does not by any means appear under the circumstances detailed, and difficulties that prevented his seeing as he attempted to cross Genesee street from the north, that he was cognizant of the approach of these horses at their high rate of speed. He was attending to crossing the street, surrounded by embarrassment and crowds, watching his own horse; and we are not to assume that although he might have seen the approach of the defendant, and heard the shouting of Cochran, he did see or hear the approaching danger, or that he was bound to do so. The highways are for the use of the public, and persons using them have the right to assume that they are reasonably safe for travel and use, and they are not bound to be watching for such acts as resulted in the death of the deceased in this case. The question of contributory negligence, like that of the defendants' negligence, should have been submitted to the jury.

Of the several exceptions taken upon the trial as to the evidence, we will notice but one. The defendant was permitted to prove, over the objection of the plaintiff, that this Genesee street had been frequently used, and for some period of time, for racing horses, with the apparent consent or toleration of city officials of the city of Syracuse. The fact that others had violated the law and the ordinances of this city forms no excuse or justification for the defendants. The only possible view in which the evidence could be material would be upon the question of contributory negligence; and then it would not be material unless it were shown that the deceased had knowledge of the fact thus sought to be proved, and for that reason should have used more caution in attempting to cross the street. The fact of such knowledge nowhere appears in the case. It can-

not be inferred from the fact that the deceased lived in the city, and sometimes crossed this street. To make this evidence competent, knowledge of the facts should have been brought directly home to the deceased. The admission of the evidence was error.

The judgment dismissing the complaint against the defendant Cochran should be reversed, and a new trial granted as to him, with costs to abide event. All concur.