JACOB ECKERT, Respondent, *v.* ST. LOUIS TRANSFER COMPANY, Appellant.

### April 10, 1876.

1. Where a juror is objected to as prejudiced, and qualifies himself under the statute and is accepted by the judge presiding on the trial, this court will not interfere.

2. Where a full panel of eighteen jurors was called, where only one juror is challenged by one of the parties, even though the court improperly refused a challenge for cause, no prejudice can arise to the party challenging, and the appellate court will not interfere.

3. The question in cases of liability of the master for the acts of the servant is not, whether the act of the servant is negligent or willful, but whether it is done whilst engaged in the master's business, and within the scope of the servant's employment.

4. Damages which give merely a full, round compensation for the injury done are not punitive.

5. Negligence of the plaintiff which does not directly contribute to the injury will not relieve the defendant from the consequence of negligence on his part which is the direct cause of the injury.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*S. M. Breckinridge*, for appellant, cited: Hill on New Tr. (2d ed.) 184, sec. 44; Nevins *v.* State, 13 Smed. & M., 500, 509; Colton *v.* State, 31 Miss. 504; Chicago & Alton R. R. Co. *v.* Adler, 56 Ill. 344; Hudson *v.* St. Louis, Kansas City & Northern Ry. Co., 53 Mo. 255; Garretzen *v.* Duenckel, 50 Mo. 104; U. S. Bank *v.* Daniel, 12 Pet. 32; Patapasco, 12 Wall. 451; Rio Grande, 19 Wall. 178: Watson *v.* Vaughn, 23 Cal. 61; Skillman *v.* Lackland, 23 Cal. 198; Smith *v.* Smith, 15 Vt. 620; Knapp *v.* Banks, 2 How. 73; Walker *v.* United States, 4 Wall. 163.

*F. & E. L. Gottschalk*, for respondent, cited: Wag. Stat. 800, secs. 21, 22, 25; Wag. Stat. (1872) 1067, sec. 33; State *v.* Holme, 54 Mo. 158, 159; State *v.* Hays, 23 Mo. 287; Hill on New Tr. (2d ed.) 155, 156, secs. 4, 7; 2 Gra. & Wat. on New Tr. 468; Whittacker *v.* Carter, 4 Ired. 461; State *v.* Schaeffler, 3 Wis. 823; State *v.* Baldwin, 12 Mo. 223; State *v.* Scanlan, 58 Mo. 204; West *v.* Forrest, 22 Mo. 344; Freeman *v.* The People, 4 Denio, 31; Stewart *v.* State, 13 Ark. 742; McGowan *v.* State, 9 Yerg. 193; People *v.* Knickerbocker, 1 Park. Cr. 304; McComas *v.* Covenant Mutual Life Ins. Co., 56 Mo. 573 (see page 576); Hudson *v.* St. Louis, Kansas City & Northern Ry. Co., 53 Mo. 525, 536; State *v.* Davis, 29 Mo. 391, 397; State *v.* Rosel, 32 Mo. 346; State *v.* Miller, Southern Law Rev. (1874) 572; State *v.* Breen, 59 Mo. 413, 417; State *v.* Klinger, 46 Mo. 226; Coacker *v.* Chicago & Northwestern R. R. Co., 36 Wis. 657; Perkins *v.* Missouri, Kansas & Texas Ry. Co., 50 Mo. 202; Gillet *v.* Missouri Valley R. R. Co., 55 Mo. 315; Maleck *v.* R. R. Co., 57 Mo. 17; Goddard *v.* R. R. Co., 10 Am. Law Reg. 33; Harrison *v.* Stowe, 57 Mo. 93; Norton *v.* Ittner, 56 Mo. 351, 352; Wyatt *v.* City R. R. Co., 55 Mo. 485; Karle *v.* Kansas City, St. Jo. & Council Bluffs R. R. Co., 55 Mo. 476; Vaughn *v.* Searle, 30 Mo. 600; Liddy *v.* St. Louis R. R. Co., 40 Mo.

506; New Orleans R. R. Co. v. Allbritain, 38 Miss. 242; 1
Redf. on Rys. 532, 534, secs. 2–4; Horne v. Newmarch,.
12 Allen, 49.

BAKEWELL, J., delivered the opinion of the court.

This is a suit for damages for an injury caused to the
plaintiff by the careless driving of one Eaton, an employee
of defendant, while driving one of defendant's omnibuses,
in the regular course of his employment.

The answer denies all the material allegations of plaintiff
except the incorporation of defendant, and that its business
was that of common carrier. It sets up, as affirmative mat-
ter of defense, that any injury done to plaintiff was caused
by his own negligence, which allegation is denied in the:
replication.

No evidence was introduced by the defense. The testi--
mony of the witnesses for plaintiff is quite accordant, and
leaves no doubt as to the character of the transaction.

It appears that, on June 20, 1870, some delegates of musi--
cal societies in St. Louis, to the number of about 100, were
returning from a festival at Cincinnati. At about ten o'clock
at night, about fifty of their friends crossed the river by the
ferry, to greet them on their return. These men were all
together on the boat; most of them went on the main deck,
the upper deck being somewhat crowded. The passengers.
returning from Cincinnati had, all of them, omnibus tickets;
but few or none of them were in the omnibuses, as they
preferred to be on deck, to talk to their friends. The
omnibus driven by Eaton was empty. His omnibus and
two others, and a baggage wagon, were the only vehicles,
on the ferry-boat. There was a crowd of fifty or 100 per-
sons on the levee, who had come down to greet the return--
ing party, but had not crossed the river. When the ferry--
boat touched the shore, plaintiff and others went on board.
Most of the crowd, amongst others the plaintiff, came off the.
boat by the lower bridge or gangway, over which carriages
pass, instead of by the stair-way, built expressly for foot-pas--

sengers, from the upper deck. The omnibus driven by Eaton had four horses. It was the first to leave the boat. He drove right into and among the crowd on the gangway and on the levee. When he reached the levee he took a slanting direction, owing, probably, to the steepness of the ascent, and, after driving over plaintiff and another man, and upsetting some, and compelling others on the bridge to jump into the river, he drove off rapidly to the stable, and was arrested there the next day, having attempted disguise by shaving off his beard.

The circumstances immediately attending the injury complained of were as follows: As the driver came on to the crowd passing off the gangway, many shouted to him to stop—that he would kill people. One witness seized a horse of his team by the head-gear, whilst on the gangway, to stop the omnibus; whereupon the driver rose in his box, struck witness and his horses with his whip, so that witness lost his balance and fell. As he struck, the driver shouted, "God damn you, let go that horse!" He was again shouted to to stop, when he drove up the bank as fast as he could, shouting, "Get out of my way. I don't care if I kill a hundred of you." Plaintiff was on the levee, in the crowd, and immediately in front of the exit from the ferry for foot-passengers, when the horses struck him before he could escape, threw him down, tramped on his leg and ankle, and a wheel of the omnibus passed over his thigh, not breaking the bone, but sliding along the bone of the leg, so as to draw down the muscular tissue from the thigh to the knee. He suffered excruciating pain, was for six weeks confined to his bed, under care of a physician, was more or less incapacitated for his business (that of a shoemaker) for many months, and at the date of the trial, nearly four years after the occurrence, he was still suffering from rheumatic pains, a consequence of the injury. His general health was impaired, and he was not able to work continuously, as before the injury. Before the accident he could

earn from $5 to $7 a day; since that time he could not average over $7 a week. In bad weather he can hardly use his legs, and suffers very much; and this condition is likely to be permanent. It was fifteen weeks after the injury before plaintiff was able to work at all, and during the winter he was totally unable to work. His business was destroyed and he had to close his shop. The second winter after the occurrence he could work a little, but had to close up every two or three weeks. In summer, when he can work, there is hardly anything to do in his trade; and in winter, when the shoemaking trade is brisk, his suffering will not allow him to get about to seek it. The injuries were mainly to the ankle of one leg, from the horses' hoofs, and to the thigh of the other, from the wheel.

The instructions asked and refused will be set out, so far as is necessary, in the course of this opinion.

The jury found a verdict for plaintiff, and assessed his damages at $2,500. Motions for new trial and in arrest having been overruled, the case is brought to this court by appeal.

1. The first point insisted upon by defendant, as ground for reversal, is the action of the trial court in refusing to allow defendant to challenge, for cause, a juror named Willich.

A full panel of eighteen was called, and sworn to answer questions. Willich said he had heard of the occurrence, at the time, in connection with the injury then done by the same driver to a man named Gericke; that he was a newspaper reporter, had examined into the facts, formed an opinion, and written and published a statement of the case of Gericke. He had no present recollection of the facts. What he might know of the facts from hearsay would not, the witness said, influence his opinion. The court considered the juror competent, and defendant challenged him peremptorily, and challenged no other person on the panel. Exceptions were duly saved to the action of the court.

The first question that arises is, was Willich a competent juror?

The law provides (Wag. Stat. 800, sec. 22) that no person is competent as a juror "who has formed or expressed an opinion concerning the matter, or any material fact in controversy, which may influence his judgment."

The facts in the Gericke case were unquestionably material facts in the case at bar. As to these facts, the juror had formed and expressed an opinion at a period nearly four years before the date of the trial at which he was examined as a juror. He had forgotten the facts of the case. This is not important, as there can be no doubt that the facts as formerly learned by him, and also the opinion he had formed and expressed, would return to his mind, by association of ideas, during the trial, however completely forgotten at the time. This is a psychological fact as to which there can be no reasonable doubt. But the juror swore that his judgment would not be influenced by his former knowledge. This is the material point. It has been judicially determined, in this State, that the opinion which renders a juror incompetent must be such as would influence his judgment. *McComas* v. *Covenant Life Ins. Co.*, 56 Mo. 573.

Owing to the difficulty of procuring a jury free from impressions—a difficulty which almost amounted to indemnity for crime—a legislative enactment was passed long ago, in this State, and is still in force, to the effect that, in criminal cases, a juror who has formed and expressed an opinion may be sworn, provided it is formed only on rumor, and not such as to prejudice his mind. Wag. Stat. 1103, sec. 13. In a murder case, a juror having read of the case in the papers, and formed an opinion, but declaring he had no prejudice, was accepted. This was assigned for error, and the Supreme Court said (*Baldwin* v. *The State*, 12 Mo. 223): "If the question of competency was referable to the juror himself, he was competent. But it was not his

province to pass upon the question. He could only state facts, and it was the duty of the court to determine whether, under the facts, he was competent. In deciding this question, the presiding judge at the trial, having this juror before him, witnessing the manner of his examination, possessing a knowledge of his character, is infinitely better qualified to decide than we are whether, under all the circumstances, his mind and feelings are in a condition which will enable him to discharge honestly and impartially his duty as a juror. Where the juror qualifies himself under the statute, and the presiding judge accepts him, this court cannot say that error has been committed." And in *The State* v. *Davis*, 29 Mo. 391, the Supreme Court says that, unless this rule is adhered to, competent jurors cannot be obtained. In *The State* v. *Rose*, a juror who had heard the alleged facts of the case, which were fresh in his mind, and who said that his mind was "fixed and made," if the facts appeared on the trial as he had heard them detailed, was accepted as competent. Bound, as we are, by these opinions, we cannot see clearly that the court below committed error in accepting this juror. There was, probably, something in his manner of answering the questions, and in his general appearance, which gave to the learned judge an assurance of his want of undue bias, which is not so strongly felt from a mere perusal of the record. We cannot legally interfere with this action of the trial court in this case.

We are also of opinion that, had he been incompetent, no error was committed against the appellant materially affecting the merits of the action. Where this is the case we cannot interfere. Wag. Stat. 1067, sec. 33.

There was a full panel of eighteen jurors in this case. Under the law, the first twelve names on the list are the trial jury. The plaintiff must first announce his challenges, and he made none. The defendant exercised his right of peremptory challenge but once. Now, in what way can he possibly be affected by the fact that Willich, the only man

challenged, was challenged peremptorily instead of for cause, and that upon him was exhausted one challenge, when two challenges remained of which defendant declined to avail himself? Willich was gone, and defendant wished him away. It can only be said that defendant wished, for some special reason, to reach and have on the panel the sixteenth juror, and that he could only effect this by having four challenges, one for cause and three peremptory; but that—this object being defeated by the denial of the challenge for cause—defendant had no further reason for exercising his other two remaining challenges, and, therefore, against his will, accepted the jury as it was, without further challenge. But that he was, as he undoubtedly was, thus deprived of the power of selecting a particular juror, has been decided to be no injury to the rights of a litigant. This question has been authoritatively determined in this State (*State* v. *Hays*, 23 Mo. 287; *State* v. *Holme*, 54 Mo. 153), and, as it manifestly appears that defendant was in no way prejudiced by the action of the trial court in accepting this juror, except on the erroneous theory that peremptory challenge means the right to select, not the mere right to *exclude*, there was here no error of which defendant can complain.

2. The following instructions were given to the jury, at the instance of plaintiff:

1. "If the jury find from the evidence that a driver of defendant, while in the course of his employment, drove defendant's omnibus and horses in so negligent and careless manner as to run over plaintiff and injure him, without any negligence or want of care on the part of plaintiff contributing directly to the happening of said injuries, then they will find for plaintiff."

2. "If the jury find for the plaintiff, they will assess his damages at such a sum, not exceeding $5,000, as they believe from the evidence to be a reasonable compensation for the injuries he has sustained, the pain and suffering caused thereby, the expense of his medical treatment for

such injuries, and the loss of time resulting from such injuries, if any such have been shown in evidence ; and, in assessing the damages, the jury will take into consideration the nature of the injuries—whether or not they are of a permanent character ; how, if at all, they will affect the ability of plaintiff in the future to earn a living ; how, if at all, they will affect his future health ; and what pain and suffering, if any, they will hereafter cause to the plaintiff.''

To the giving of these instructions defendant excepted.

The following instruction was given at the instance of the defendant :

'' If the jury believe from the evidence that the careless-ness, negligence, or imprudence of the plaintiff contributed directly to the injury, or if the jury find from the evidence that the driver of the omnibus willfully caused the injury, not to promote the interest of his employer, nor within the scope of his employment, but out of malice, ill-will, or anger, and for purposes of his own solely, the jury will find for the defendant.''

Twelve instructions asked by defendant were refused. These instructions were to the effect that punitive damages could not be given ; that the measure of damage is compensation for his loss of time and money expended ; that, if the injury was done willfully or maliciously by the driver, or to effect a purpose of his own, or from spite—whether against plaintiff or others—or that, though driving defendant's omnibus, he was not engaged in serving it at the time, or that plaintiff, by his negligence in using the wrong exit from the ferry, contributed to the injury, then plaintiff cannot recover. To the refusal of these instructions defendant excepted.

The doctrine of this case is now pretty well settled in this State, and the instructions given put the case to the jury even less favorably than plaintiff might have demanded. There is nothing in the law given by the court of which defendant can complain.

"The test of defendant's liability," as is said in a similar case in Massachusetts, by Judge Hoar (*Howe* v. *Newmarch*, 12 Allen 49), "is, not the intention of the servant, but the fact that the injurious act was done while engaged in his master's business, and within the scope of his duty as a servant. If the act of driving over the plaintiff was done willfully, still it may also have been done negligently, in the view of the law. The test of the master's liability is not whether the servant was a trespasser. The master is no more consenting to the thoughtless negligence of his servant than to his willful negligence."

The question, in cases of this kind, is not whether the act of the servant is negligent or willful, and *McManus* v. *Crickett*, 1 East, as is said by Judge Redfield (Redf. on Neg. 534), has either been misunderstood or is not law in America. It certainly is not in Missouri. The inquiry is whether the act was done in the course of the servant's employment. The argument that, when the servant acts willfully, he *ipso facto* leaves the employment of the master for the minute or so that his passion rages, is rightly characterized as a specious fallacy. If an engineer of a road purposely runs over a cow, the road is as much liable as if he did it carelessly. He is driving their locomotive and acting as their servant, with the means of mischief they have intrusted to him. The master, in case of negligence or willfulness, is liable, not so much for having impliedly authorized the act, as for having employed a faithless servant, who did the injury in the course of his employment. These are the views adopted by Judge Redfield, after a careful consideration of the authorities, and these views seem to be fully sanctioned by the more recent decisions on these subjects in our own State.

The universally recognized rule is that the principal is civilly liable for neglect, fraud, or other wrongful acts of his agent in the course of his employment, though the prin-

cipal did not authorize the specific act.   *Garretzen* v. *Duenckel*, 50 Mo. 104.

Corporations, says the Supreme Court of this State, in *Perkins* v. *Missouri, Kansas & Texas Railway*, only act by agencies, and whatever agents do within the scope of their authority is the act of the corporation, and if agents, in acting within the scope of their authority, act in a willful and malignant manner, and damage any one, they are certainly responsible ; and in *Gillett* v. *Missouri Valley Railroad*, 55 Mo. 315, and *Malecek* v. *Tower Grove Railroad*, 57 Mo. 17, corporations are held liable for the malicious acts of their agents, and it is held that exemplary damages may be recovered against a corporation for the wanton, malicious, and oppressive acts of its servants.  *Buckley* v. *Knapp*, 48 Mo. 152.

Damages, however, which give merely a full compensation for the injury done are not punitive, and were allowed without hesitation when it was doubted whether punitive damages could be given at all in a civil case.  *McKeon* v. *Citizens' Railroad Company*, 42 Mo. 79.  The damages given in the case before us are clearly no more than a fair and reasonable compensation for the injury done to the plaintiff by the wanton act of defendant's servant.

The instruction as to contributory negligence, by using the wrong exit from the boat, was properly refused.   Whether the plaintiff left the ferry-boat by the proper exit, or not, could not be material, since he was run over, not on the bridge-way, but on the levee in front of the regular passenger exit, and after he had entirely left the boat.

On the facts in evidence, the plaintiff was clearly entitled to recover, and the damages given are no more than a round compensation for his pain, loss of time, and permanent disablement.

It is urged that the court erred in refusing to admit evidence of proceedings in the Police Court and Court of Criminal Correction, against the driver, for careless driving

and for the assault. There was no error in this. These proceedings could not be competent evidence in this case for any purpose.

We see no error in this record. The judgment of the Circuit Court is affirmed. The other judges concur.