# Franklin Sawyer
## v.
# Susanna Martins.

*Personal Injuries—Action for Damages*—Respondeat Superior—*Evidence.*

1. The maxim, *respondeat superior*, only applies to acts of a servant done in the course of his employment, and while engaged in the business of his master.

2. In an action to recover damages for personal injuries, it is *held:* That the verdict is not supported by the evidence; and that the defendant is not liable, the person or persons whose negligence caused the injury complained of not having been in his employment or engaged in the prosecution of his business when the plaintiff's son was injured, or in the matter out of which the injury grew.

[Opinion filed March 28, 1888.]

Appeal from the Superior Court of Cook County; the Hon. John P. Altgeld, Judge, presiding.

Mr. Joseph Wright, for appellant.

Mr. Pliny B. Smith, for appellee.

Bailey, J. This was an action on the case, brought by Susanna Martins against Franklin Sawyer and Charles D. Rockwood to recover damages for loss of services and expenses sustained by reason of an injury to her minor son, Thomas B. Martins, caused, as is alleged, by the negligence of the defendant's servants. The plaintiff's son was injured by the fall of a sign-board which certain persons were engaged in tak'ng down from the Kinzie Street front of a building belonging to defendant Sawyer, situated on the northeast corner of Kinzie Street and Dearborn Avenue, Chicago. The jury found both the defendants guilty, but assessed separate damages, the damages assessed against defendant Sawyer being $275, and those assessed against defendant Rockwood being

§25. The plaintiff was thereupon permitted to discontinue her suit as to defendant Rockwood and judgment was rendered upon the verdict against defendant Sawyer for $275 and costs.

The facts, as shown by the evidence, are these: For some time prior to the injury to the plaintiff's son, the second story of said building had been occupied by the firm of Z. Cobb & Sons as their place of business. On the last day of May, 1885, the lease to said firm having expired, they vacated said premises, leaving two sign-boards attached to the second story of the building, one on the Dearborn Avenue front and the other on the Kinzie Street front. A few days after they moved out, defendant Rockwood, who occupied premises across the street from said building, had a conversation with defendant Sawyer, in which he asked him who the signs belonged to. Sawyer said that they did not belong to him, but to Z. Cobb & Sons, but that the foreman of that firm had said to him, that if anybody would take them down he might have them. Rockwood then said that he thought he would take them. Sawyer replied that they did not belong to him, and it would be all right if he, Rockwood, should take them down.

The foregoing is the conversation substantially as testified to by Sawyer. Rockwood's version of it is not materially different. He says: "I asked him why Z. Cobb & Sons did not take the signs away. He said they left them there and said anybody could have them. Said he, 'Have you any use for them?' 'Well' said I, 'I think I can use them.' 'Well,' said he, 'you can have them, and when the boys have time, take them down.'"

On the 11th day of May, 1885, a few days after this conversation, Anderson and Kelly, two of Rockwood's employes, went over to Sawyer's building to take the signs down. The only evidence of any directions by either of the defendants to them or any one else to take down the signs is in Anderson's testimony, who swears that about an hour before they went over, Rockwood told them that they were to take the signs down when they got to it. Sawyer's testimony is clear and explicit that he gave no directions to any one to take them down, and had nothing to do with the matter, and did not

know that his son or any person in his employ was present assisting in the enterprise, and in this his evidence is in no way contradicted. It appears, however, that one of Sawyer's sons, a boy about fifteen years old, went over to the building with Anderson and Kelly and assisted in taking down the signs. There is also some evidence tending to show that another person, then in Sawyer's employ, was present. Kelly testifies that such was the fact though he is unable to identify the person or give his name, while Anderson testifies that only he, Kelly and young Sawyer, were present or had anything to do with taking down the signs.

The sign on the Dearborn Avenue front was safely detached from the building, and while that sign was being taken inside the building and laid down by the others present, Anderson undertook to detach the other sign without assistance, and in doing so he let it fall to the sidewalk below, and in its fall it struck the plaintiff's son and broke one of his legs and otherwise injured him.

We are unable to see how, upon the foregoing facts, defendant Sawyer can be held to be liable. The utmost effect that can be given to his conversation with Rockwood is, that he thereby gave Rockwood a license to enter upon his building and remove the sign, but the removal, when it was undertaken by Rockwood, was not Sawyer's enterprise, nor was it undertaken in his interest or for his benefit. It was a matter in respect to which he was a mere stranger. Nor does it seem to be important that his son, or one of his employes, was present assisting in taking down the signs, so long as neither of them was there by his direction or authority, or in the performance of any act pertaining to his employment. The maxim, *respondeat superior*, only applies to acts of a servant done in the course of his employment, and while engaged in the business of his master; but when he sees fit to step outside of his master's business and aid another person in the performance of a tortious act, he ceases, *pro hac vice*, to be a servant of such master, and *respondeat superior* no longer applies.

The case of Stevens v. Armstrong, 6 N. Y. 435, is very similar to the present in many of its features, and may serve

to illustrate the principles here involved. There the defendants gave permission to an employe of another firm to go to the upper story of their premises to find a box which said firm wished to purchase, and such box being found and paid for, the purchasers sent their porter to get it. Said porter, with the knowledge and permission of the defendants, proceeded to said loft to get the box down, and being there, called to some person below to hoist the "fall" which was on the outside and in front of the store. A person below took hold of and hoisted it up, when the porter attached the hooks to the box and called to the party below to hoist, which was done, and the box, after being swung out of the door, became detached from the hooks and fell to the sidewalk and injured the plaintiff. It was held that although the injury was caused by the negligence of the porter while removing the box from the defendant's premises with their knowledge and consent, he was not in their employ, and that the relation of master and servant did not exist between him and them. The court say: "The defendants did not employ the porter to do the act, in point of fact, nor did he assume to act as their agent or servant in that respect, but as the servant of the purchasers, in whose service, in fact and in law, he was."

Brackett v. Lubke, 4 Allen, 138, upon which counsel for the appellee seems to place considerable reliance, is clearly distinguishable from the present case. There the defendants, who were the tenants of a building, engaged a carpenter to repair an awning and told him what they wanted to have done, but were not present when the work was being performed. The defendant afterward paid the carpenter for said repairs. In the course of the work a rod fell and struck the plaintiff, and the jury having found that the injury resulted from the negligence of the carpenter, the defendants, his employers, were held liable. There the existence of the relation of master and servant between the defendants and the carpenter was clear and undisputed, and there was no room to doubt the application of the rule *respondeat superior.*

In the present case, not only is the proof of the existence of that relation wanting, but the evidence is explicit that it

did not exist. The person or persons whose negligence caused the injury complained of were not in defendant Sawyer's employment nor engaged in the prosecution of his business at the time the plaintiff's son was injured or in the matter out of which said injury grew. The verdict, then, as to defendant Sawyer, is wholly unsupported by the evidence, and the judgment must therefore be reversed.

Other questions are discussed, but, as what we have already said fully disposes of the case so far as this appeal is concerned, we need not consider it further. The judgment will be reversed and the cause remanded.

*Judgment reversed.*