## VAN DEY MARK v. CORBETT.

(Supreme Court, Appellate Division, Third Department.   March 10, 1909.)

1. SALES (§ 4*)—CONTRACT—BAILMENT.
    There is a sale, with a consequent change of title, and not a bailment, where one leaves a cow with another to double in two years; there being no obligation to return the identical cow.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 7, 8; Dec. Dig. § 4.*]

2. SALES (§ 199*)—TRANSFER OF TITLE.
    There is not a complete sale or transfer of title, but at most an executory contract for future transfer of property by will or otherwise, where C. told G., if she stayed and took care of him as long as he lived, and saw that he was buried, she could have his cattle; the property not having been present, there having been no delivery, she not having exercised any act of ownership or control over it, its value having been $50, and there having been no writing.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 199.*]

3. JUSTICES OF THE PEACE (§ 185*) — REVERSAL OF JUDGMENT—WEIGHT OF EVIDENCE.
    The authority conferred by Code Civ. Proc. § 3063, as amended by Laws 1900, p. 1277, c. 553, on County Courts to reverse judgments of justices as against the weight of evidence, is to be exercised only where a judgment is so plainly against the weight and preponderance of evidence that it can be seen that the justice could not reasonably have arrived at the conclusion he made.
    [Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 716–718; Dec. Dig. § 185.*]

4. MASTER AND SERVANT (§ 302*) — CONVERSION BY SERVANT — LIABILITY OF MASTER.
    One, in the custody of whose employé a sheriff temporarily leaves property levied on, is not liable for conversion because of the employé's refusal to deliver the same on the demand of a third person; such custody not being in the scope of the servant's employment.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1220; Dec. Dig. § 302.*]

Appeal from Broome County Court.

Action by Grace Van Dey Mark against Marshall J. Corbett. From a judgment of the County Court, reversing a judgment of the City Court of Binghamton for defendant, defendant appeals. Judgment of County Court reversed, and judgment of City Court affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Hinman, Howard & Kattell, for appellant.
Albert S. Barnes, for respondent.

SEWELL, J.   This action was brought to recover damages for the alleged conversion of cattle and poultry levied upon and sold by a sheriff, under an execution issued out of the court of common pleas of Susquehanna county, Pa., against the property of Fred Adams, the father of the plaintiff, and Sarah Adams, his wife. The complaint alleged that during the month of November, 1906, and for a long time prior thereto, the plaintiff was the owner and in the possession of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property in question, and that on or about the 17th day of December, 1906, the defendant wrongfully took possession of and unlawfully and wrongfully converted said property to his own use. The order appealed from states that the judgment of the City Court was reversed "for errors of law, and because said judgment is contrary to and against the weight of evidence."

The principal issues of fact in the case were: (1) Whether the plaintiff was the owner of the cattle; (2) whether they were converted by the defendant. It was undisputed that the cattle were in the possession of the execution debtors at the time of the levy, that they were raised upon a farm occupied by them under a contract of sale given to Sarah Adams. that the business was carried on in her name, and that Fred Adams did the work and managed the business for her.

The plaintiff claimed that the cattle were the increase of a cow purchased by Abbie Adams at a sheriff's sale in the year 1897, and that she then left the cow with Charles Adams to double. She testified: "I told him, if I left the cow, he could have it to double in two years." She also testified that the cow and increase remained there. "I never took anything away from him. I didn't do it for my own benefit." Fred Adams, the principal witness for the plaintiff, testified that the cow was kept on the farm about 4 years; that she had 4 calves, and they were kept on the farm; that they also increased; that no other stock was brought on the farm during these 10 years; that he started 10 years ago with this 1 cow on the farm, and ended up with 14 cattle; and that he knew the 14 head of cattle on the farm in November, 1906, could be traced back to that cow, because "I was there, and took care of them, and raised them."

The plaintiff claimed title to the property under a bill of sale from Abbie Adams, dated November 13, 1906, and under a contract claimed to have been entered into with Charles Adams. She testified that a short time before his death "he told me, if I would stay and take care of him as long as he lived, and after he was dead paid his doctor bill and his expenses, I could have all of the cattle that was on the farm." Fred Adams, her father, testified that he had heard the conversation, and that his father said that:

"He would give her his interest in the stock if she would take care of him through his sickness—see that he was cared for."

Arthur Van Dey Mark, her husband, testified that he was present, and that Charles Adams said:

"If she would stay home and take care of him, and see that he had burial and everything, she might have everything that belonged to him."

Though this evidence proceeded wholly from parties having a direct or indirect interest in the question at issue, I think it warranted a finding that the cattle belonged to the execution debtors. It is true that possession is only presumptive evidence of ownership; but, beyond that, there was in this case the conceded fact that the cattle were raised by them and were the products of their farm and business, which made the presumption well-nigh conclusive. However this may be, it seems to me clear that the plaintiff acquired no right to the property by the assignment from Abbie Adams; for, if the terms of the letting

to Charles Adams were as claimed by her, he was under no obligation to restore the identical cow, and the title to it was changed. There was a sale, and not a bailment. Wilson v. Finney, 13 Johns. 358; Hurd v. West, 7 Cow. 752; Foster v. Pettibone, 7 N. Y. 433, 57 Am. Dec. 530; Reed v. Abbey, 2 Thomp. & C. 380.

It also seems to me clear that the various and somewhat loose and uncertain statements as to what transpired between the plaintiff and Charles Adams fall short of establishing a complete sale or transfer of title to her, and that it was nothing more than an executory contract for the future transfer of his property by will or otherwise. In support of this view we have the fact that no evidence was given on the part of the plaintiff tending to show a delivery of the cattle to her, that she ever exercised any act of ownership or·control over them, or intimated that she had an interest therein before the levy. In addition to this, it appeared by the evidence of the defendant, the sheriff, and another witness that she then claimed a calf, stating that:

"Her grandfather left her a cow and calf. The calf was there, and she would like to get the calf."

It will also be observed that the value of the property was conceded to be over $50, that the alleged agreement was not in writing, that the property was not present, that there was no visible change in the possession or use of it, and that nothing was done that the law required to vest the title in the plaintiff. A careful examination of the evidence has convinced me that the judgment of the City Court should not have been reversed as against the weight of evidence.

Prior to the amendment of section 3063 of the Code of Civil Procedure by chapter 553, p. 1277, of the Laws of 1900, a County Court was not permitted to reverse a judgment as against the weight of evidence where the evidence was conflicting. Ludlum v. Couch, 10 App. Div. 603, 42 N. Y. Supp. 370; Norton v. Arvernam Co., 14 App. Div. 581, 43 N. Y. Supp. 1099; Clark v. Daniel, 29 App. Div. 600, 51 N. Y. Supp. 177; Northridge v. Astarita, 47 App. Div. 486, 62 N. Y. Supp. 441; Burnham v. Butler, 31 N. Y. 480. In the Burnham Case the court stated the rule as follows:

"That where, on a trial in a justice's court, there is evidence on both sides, and even where there is only slight evidence in support of the cause of action on which there is a recovery, the County Court is not authorized to reverse the judgment, although such court may arrive at a conclusion upon the facts of the case, or weight of evidence, different from that drawn by the justice."

It is well settled that the authority conferred by that amendment is to be exercised only where the judgment is so plainly against the weight and preponderance of proof that it can be seen that the justice could not reasonably have arrived at the conclusion which he made. Murtagh v. Dempsey, 85 App. Div. 204, 83 N. Y. Supp. 296; Brewer v. Califf, 103 App. Div. 138, 92 N. Y. Supp. 627; Clinton v. Frear, 107 App. Div. 571, 95 N. Y. Supp. 321; McRavy v. Barto, 114 App. Div. 262, 99 N. Y. Supp. 712. Tested by this rule, it is clear that the learned county judge erred in reversing the judgment of the City Court.

I am also of the opinion that the plaintiff did not prove that the defendant was guilty of conversion. There was no claim or pretense that the defendant ever had the actual possession or control of the cattle. On the contrary, the evidence established the fact that he exercised no dominion over them, and at all times insisted that he had nothing to do with the property. It did appear that, after the levy was made, the sheriff left the property for a time in the custody of Charles Lasure, one of the defendant's employés, and that Lasure refused to surrender it in response to a demand by the plaintiff. The theory of the plaintiff seems to have been that the defendant was responsible for the act of Lasure in refusing to deliver the property.

The general rule is that a master is liable for the acts of his employé done within the scope of his employment; but it is well settled that this rule only applies when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong, at the time and in respect to the very transaction out of which the injury arose. In Wyllie v. Palmer, 137 N. Y. 248, 257, 33 N. E. 381, 384, 19 L. R. A. 285, Judge O'Brien said:

"The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct."

In Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 79, 50 N. E. 500, 502, 66 Am. St. Rep. 537, the court said:

"Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master"—citing Wyllie v. Palmer, supra, and McInerney v. D. & H. Co., 151 N. Y. 411, 45 N. E. 848.

It was substantially undisputed that Lasure represented the sheriff in retaining possession of the cattle, that he was engaged in doing his work, and that the sheriff alone had the right to control or direct him in that particular employment. Under such circumstances it is apparent, I think, that the trial court did not err in finding, as it apparently did, that the defendant did not sustain the relation of master to Lasure at the time of the alleged conversion.

It follows that the judgment of the City Court was not contrary to the evidence, or contrary to law, and that the judgment of the County Court should be reversed, with costs, and the judgment of the City Court affirmed, with costs. All concur; SMITH, P. J., and KELLOGG, J., in result.