# Wytheville.

## U-Run-It Company, Inc. v. J. H. Merryman.

June 12, 1930.

Absent, Prentis, C. J., and Epes, J.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Harry Cuthriell, Jas. G. Martin* and *Tom E. Gilman*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action by notice of motion was brought by J. H. Merryman against U-Run-It Company, Incorporated, to recover damages for personal injuries sustained by the plaintiff by reason of the alleged negligence of the defendant company. There was a trial by a jury which resulted in a verdict and judgment for the plaintiff, to which judgment this writ of error was awarded. The evidence, direct and circumstantial, relative to the time of the hiring of the car, as hereinafter set forth, and the manner in which the accident occurred is conflicting.

The defendant is a corporation engaged in the business of renting automobiles without chauffeurs, with its place of business in the city of Portsmouth. In entering and leaving its place of business, situated on High street, cars have to pass over the sidewalk.

The testimony of the employees of the defendant tended to prove that on Sunday morning, November 27, 1927, the defendant rented an automobile to a sailor by the name of Shindell, who used the same until 4:30 or 5:00 o'clock P. M. When the automobile, driven by Shindell, with several passengers in it, approached the entrance to the place of business of defendant, and was being driven across the sidewalk, the motor stalled and the automobile rolled backward until the rear wheels rested in the gutter.

V. A. Levison, president of the company, gave in substance this account of the accident: The car belonged to the U-Run-It Corporation. It was checked out on Sunday morning, November 27th, to a young sailor named Shindell or Shinnell. That afternoon, around 4:30 o'clock, he was standing outside the building when the car came down High street and turned to come into the driveway, and stalled about four or five feet from the garage entrance. He was standing on the left-hand side of the car; he saw the plaintiff and several other persons near the car and he cautioned the plaintiff, who was proceeding to pass in front of the car, to wait, and cautioned the driver to "hold on." Both of them disregarded his warning, and just as the plaintiff arrived in front of the car Shindell stepped on the starter, the car moved forward and the bumper struck the plaintiff, inflicting the injuries complained of. The car had not been redelivered to the defendant; he did not direct Shindell in the operation of the car in any manner whatever.

The case displayed by the plaintiff may be stated thus: As plaintiff approached the garage the car was being backed out of it; he saw the sailor at the steering wheel; the car backed out until the rear wheels were in the gutter, when it stopped; he had space sufficient

(about five or six feet) to pass in front of the car, and was proceeding to do so when the car, without warning, ran forward and struck him; a young man whom he identified as Levison was standing upon the running board, leaning in the window "showing the sailor how to work the machine and how to run it."

That the plaintiff suffered serious injuries is beyond dispute.

The defendant interposed the defense of contributory negligence, and also filed a special plea setting up the defense that the accident occurred while the automobile was being operated by a bailee.

The assignment of error is:

"That the trial court erred in refusing to set aside the verdict and enter judgment for the defendant on the ground that the verdict was contrary to the law and the evidence and without evidence to support it, and further on the grounds that the evidence conclusively showed that prior to the time of the accident the automobile was in possession of the bailee and that the bailment had not been terminated at the time of the accident, and further on the grounds that the action of the man on the running board was not an act of a servant or agent of the defendant, acting within the scope of his employment, and further on the grounds that the jury failed to be governed by instructions marked 1D, and further on the grounds that instruction 2D was amended by the court without evidence to support the amendment, and failed to enter final judgment for the defendant."

The general doctrine is that the burden is upon the plaintiff to show the negligence of the defendant as a basis of recovery, while upon the defendant, when properly pleaded, rests the burden of showing the contributory negligence of the plaintiff. When the facts

are not disputed, or are conclusively shown, the question of negligence is one for the court; but when there is a conflict of evidence as to the facts, the jury, under proper instructions from the court, should be permitted to settle the disputed question. As stated, there is a conflict of evidence as to whose negligence caused the injuries suffered by the plaintiff, and whether or not plaintiff was guilty of contributory negligence. Under proper instructions all disputed facts were submitted to the jury and they, by their verdict, have concluded the cause of the accident against the defendant.

The second defense relied upon by the defendant is that the accident occured while the automobile was in the possession of and under the exclusive control of its bailee, Shindell. Whether or not the bailment had terminated at the time of the accident was likewise a question for the jury. The testimony of Levison is to the effect that the bailment began when the automobile was rented to Shindell the morning of the accident, and that the automobile had not been received by the defendant at the time the accident occurred. The evidence of the plaintiff is that Levison, the president of the defendant, was at the time of the accident directing and controlling the operation of the automobile.

A careful reading of the record discloses that it was the custom of the defendant to require of a bailee a written contract of hire. This contract usually showed the time when the automobile went into the possession of the bailee. In view of the positive statement of the plaintiff that the automobile had backed out of the garage, the time of hiring was a most material element affecting the veracity of the witnesses. It was in the power of the defendant to secure the names of the passengers in the automobile and either produce them as witnesses or satisfactorily account for their non-produc-

tion. While it is true that Levison stated that the contract of hire was secured from Shindell, his account of its non-production at the trial is very unsatisfactory. Had the contract of hire been produced, it would no doubt have influenced the jury in determining the question of fact whether the automobile was entering or leaving the garage. It would also have thrown light upon the disputed question of the operation or control of the automobile at the time of the accident. Under well settled rules of evidence the jury were not bound to accept the statement of Levison as true. Whether the automobile was entering or leaving the garage is not of itself the crucial question in the case. The crux of the matter is, in whose possession or under whose control was the automobile at the moment the accident occurred? The general doctrine is that a bailor is not responsible for the acts of his bailee resulting in injuries. It is also well settled that the master is not responsible for the acts of the servant, unless there has been a breach of duty which the master owed the injured party. If, as contended by the defendant, the proof shows that the bailment was still in effect and that Levison was a mere volunteer in directing the movement of the automobile and was acting outside the scope of his employment, it follows that the defendant is not liable.

Numerous authorities are cited by defendant in support of this well recognized doctrine. The cases cited, in our opinion, are not in point. Among them is the case of *Appalachian Power Co.* v. *Robertson*, 142 Va. 454, 129 S. E. 224, 225. In that case the facts are dissimilar and it is clearly distinguishable from the case at bar. The facts, as stated by Chief Justice Prentis who delivered the opinion, are as follows:

"The plaintiff was driving a single horse and wagon along a private roadway through an orchard to deliver

his load. The company had a line of·poles and wires across this roadway, and was restringing certain wires. In connection with this work three copper wires were lying on the ground across this private way when the plaintiff approached. About this time Conner, who was a laborer employed by the company, being a member of a certain gang working under the orders of a foreman named Carter, approached. His gang were then at work over a hill and out of sight several hundred yards away. Conner had been to his dinner and had not returned to his work. He had no orders or duties whatever with reference to these wires so lying on the ground. The plaintiff asked Conner whether he could drive over them, and Conner told him that he could not, but that he (Conner) would hold the wires up so as to permit him to pass under them. They together proceeded to carry out this purpose. The horse was said to be a 'high-headed' horse, and they found it difficult to raise the wires high enough to get them over his head, so that they struck him about the eyes. At this juncture, the plaintiff was standing at the horse's head, holding him by the bit with his right hand, and assisting in holding up the wires with his left hand. Then during their joint effort to get the horse and wagon safely under these wires, the horse became frightened and unmanageable. The plaintiff held on to him, and he lunged around, the plaintiff continuing his efforts to stop and control him, but failed, and the horse ran the wagon against one of the poles of the company, about sixty-one feet away, which stopped him; one of the horse's feet struck the plaintiff's leg, breaking it, and so causing him serious injury."

Upon the undisputed facts this court held that Conners, at the time of the accident, was not engaged in any business for his master; that his "act was

voluntary and merely an act of courtesy which any passer-by would have been likely to proffer."

While it is true that the proof relating to the general duties of Levison is meager, there is, in our opinion, sufficient circumstantial evidence, when combined with the direct evidence of the plaintiff and the admission of Levison that he did tell Shindell to "put the spark up," to warrant the conclusion of the jury that Levison was acting within the scope of his employment at the time of the accident.

■ It is also assigned as error that the court erred in giving the following instruction:

"The court instructs the jury that you cannot infer negligence from the mere happening of an accident, and you cannot infer agency from the fact that the automobile was owned by the defendant, and the court further instructs the jury that you cannot find a verdict for the plaintiff unless and until the plaintiff has proved by a preponderance of all the evidence, that at the time of the injuries the automobile was being driven *or its operation directed* by a servant or agent of the defendant within the scope of his employment, and further that the driver of, or the person, if any, directing its operation, as an agent of the defendant of the said automobile was guilty of negligence which proximately caused or contributed to the injuries complained of, and further that the plaintiff was not guilty of any negligence which proximately caused or contributed to the injuries."

As originally proffered by the defendant, the instruction did not contain the italicized language. The amended instruction correctly stated the law. As proffered, the instruction restricted the view of the jury to the manual operation of the automobile and ignored entirely its operation and control by direction

of a servant of the defendant acting, as we have seen, within the scope of his employment.

Upon the whole case, we are of opinion that the negligence of the defendant, the question of the contributory negligence of the plaintiff and the proximate cause of the accident were fairly submitted to the jury, and that the judgment of the trial court should be affirmed.

*Affirmed.*