**Marjorie C. ROSENBLOOM, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE CO., Defendant.**

United States District Court
S. D. New York.

Jan. 14, 1963.

Alfred S. Julien, New York City, for plaintiff. David Easton, New York City, of counsel.

Evans, Orr, Gourlay & Pacelli, New York City, Joseph Kane, New York City, of counsel.

McLEAN, District Judge.

This is an action on a judgment of the Law and Equity Court of Richmond, Virginia, rendered on September 23, 1957. There is no dispute as to the essential facts, which I find to be as follows:

In October 1955 defendant's corporate predecessors, in Virginia, issued a policy of liability insurance to Mary E. Ferguson, a resident of Richmond, Virginia, insuring her for a period from October 25, 1955 to October 25, 1956, up to a maximum amount of $25,000 against liability for bodily injury caused by accident arising out of the use of a Cadillac automobile. The policy defined the "insured" to include "the Named Insured * * * his spouse * * * and * * * any person while using the automobile * * * provided the actual use of the automobile is by the Named Insured or such spouse or with the permission of either." This provision is required by the Virginia Statute. Code of Virginia (1950) § 38.1–381.

Although the Cadillac automobile was registered in the name of Mary E. Ferguson, it had been purchased by her son Henry Ferguson, who was the real owner of the car. He had the unrestricted permission of Mary E. Ferguson to use the automobile as he might see fit.

On September 15, 1956, Milton S. Grant, a resident of New York, went to Richmond to spend the weekend with his friend Quarles who worked in New York, but who had originally come from Richmond. On the evening of Saturday, September 15, Quarles introduced Grant to Quarles' friend, Henry Ferguson, whom Grant had never met before. Ferguson undertook to show Grant the town.

That evening, Ferguson drove Grant, Quarles and other friends around Richmond in the Cadillac automobile, for a good part of the night. They stopped at various bars and dance halls and imbibed freely. Ferguson did all the driving. In the small hours of the morning, they finally wound up at the apartment of one Squire, a friend of Ferguson's. Ferguson left the car in a nearby filling station and he, Grant, Quarles and others went into Squire's apartment. There they stayed up for a while and did some more drinking. Finally about 4:00 A. M., Ferguson began to feel "tired." He lay down on the couch and went to sleep.

Grant, however, remained awake. About 7:00 A. M., while Ferguson was still asleep, Grant took the car keys from a table where Ferguson had left them, went to the service station, started up Ferguson's car and drove off. Shortly thereafter he collided with a car in which plaintiff was riding, with resulting injury to plaintiff. Grant testified that his motive in taking the car was to "move" it out of the service station driveway so that it would not block the entrance when the station opened up for the day. It appears without contradiction, however, that the scene of the accident was on a main street of Richmond some three-quarters of a mile away from the service station. Grant's explanation of his actions in "moving" the car such a distance was that he was looking for a place to park and became lost.

Grant had no operator's license. His New York license had been revoked a month before.

Grant was arrested after the accident, but was soon released and returned to New York later that day.

On Sunday, after he had learned of the accident, Ferguson telephoned plaintiff and told her that she had no need to worry because he was insured.

Plaintiff thereafter began an action in the Law and Equity Court of Richmond against Ferguson and Grant. She alleged that Ferguson was the owner of the car and that Grant was operating it as Ferguson's agent. Such an allegation is necessary in Virginia, where, in order to hold a car owner liable, plaintiff must prove that the driver was operating the car, not only with the permission of the owner, but also upon the owner's business. U-Run-It Co. v. Merryman, 154 Va. 467, 153 S.E. 664 (1930).

The defendant insurance company, through its attorneys, defended Ferguson in the action. It did not defend Grant, who did not appear. Grant did not notify defendant of the action or request it to defend him.

During the course of the trial in the Virginia court, plaintiff's attorney advised the court that he could not prove that Grant was Ferguson's agent and that accordingly, he moved for a nonsuit. The court granted the motion. Plaintiff then proceeded against Grant alone. The trial ended in a judgment dated September 23, 1957 which nonsuited plaintiff as against Ferguson and awarded plaintiff judgment by default against Grant in the sum of $20,000. Plaintiff has been unable to satisfy that judgment.

Thereafter, plaintiff began an action on the judgment against the defendant insurance company in the Law and Equity Court of Richmond. Before the case reached trial, plaintiff consented to a nonsuit, and a judgment of nonsuit against her was entered on April 7, 1959.

The theory of the present action is that Grant was driving the car with the consent, express or implied, of Ferguson, that he therefore was the "insured" within the meaning of defendant's policy, and that consequently, defendant is bound by the judgment against Grant. If plaintiff's premise is correct, her conclusion follows as a matter of Virginia law, and defendant is so bound. Code of Virginia (1950) § 38.1-380.

Defendant contends that the premise is not correct, i. e., that Grant had neither express or implied permission from Ferguson. Defendant also urges that even if Grant did have permission and thereby came within the definition of "insured" in the policy, recovery is barred by reason of Grant's failure to comply with the obligations of the in-

sured under the policy to give defendant prompt notice of the accident and notice of the beginning of suit against him. Before considering these contentions, two other points raised by defendant should be disposed of.

■ Defendant argues that the judgment of nonsuit against plaintiff in the action brought by her against defendant in Virginia, and the judgment of nonsuit in her action against Ferguson in Virginia, bar her present claim. This position is without merit. It is clear that in Virginia, a nonsuit is the equivalent of a voluntary discontinuance. It is not an adjudication on the merits and has no *res judicata* effect. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 184 S.E. 457 (1936).

Indeed, there is authority to the effect that even if the judgment in Ferguson's favor had been on the merits, it would not afford this defendant a defense of *res judicata*, because of the fact that the issues in the two cases are different, the issue in the Virginia case being whether Grant acted as Ferguson's agent, whereas in this case the issue is merely whether Grant drove the car with Ferguson's permission. American Auto. Ins. Co. v. Fulcher, 201 F.2d 751 (4th Cir., 1953).

Defendant also argues that even if the judgments of nonsuit do not render the issues *res judicata*, still this court is without jurisdiction, because a Virginia statute provides that after a nonsuit "no new proceeding on the same cause of action shall be had in any court other than that in which the nonsuit was taken * * *." Code of Virginia (1950) § 8–220.

■ This position is equally without merit. The Virginia statute is procedural only. It applies only to actions in the Virginia courts. It does not affect plaintiff's substantive rights. Therefore, it cannot affect the jurisdiction of the federal courts and does not prevent an action in a federal court after a nonsuit in a Virginia court. Popp v. Archbell, 203 F.2d 287 (4th Cir., 1953).

I turn now to the merits of the case. Clearly, Grant had no express consent from Ferguson to drive the car. Ferguson testified flatly that he did not consent. Grant did not claim otherwise.

The question, therefore, is whether Grant had implied consent. This question must be determined by the law of Virginia.

There have been a number of decisions on the subject in the courts of Virginia and in the federal courts sitting in that state. Each decision turns, of course, upon its particular factual situation. The case closest to the case at bar on the facts is Mason & Dixon Lines v. Martin, 222 F.2d 328 (4th Cir., 1955) which also involved an all night tour of bars and dance halls by the car owner and his friend, and the taking of the car keys by the friend in the early hours of the morning without the owner's knowledge. The Court of Appeals there held that the District Court properly directed a verdict for the defendant, the owner's insurance company. This is a holding that there was no implied permission, as a matter of law.

There have been several cases in which the courts have held that a question of fact was presented and that a finding of implied permission by the trier of the fact could not be upset as clearly erroneous. Typical of such cases are American Auto. Ins. Co. v. Fulcher, supra, and Utica Mutual Insurance Company v. Rollason, 246 F.2d 105 (4th Cir., 1957).

■■ In general, the cases indicate that a question of fact is presented if there is a prior course of dealing between the owner and the driver which tends to show consent by the owner, or if the driver is using the car at the time of the accident on some errand for the owner's benefit. Neither factor is present here. There was no prior relationship between Ferguson and Grant. They had never met before that Saturday evening and throughout their journey around Richmond that night, Ferguson did all the driving. There is nothing whatever to

show any intent on his part to allow Grant to drive.

As far as the second factor is concerned, it is true that Grant's professed motive of "moving" the car to avoid blocking the entrance to the service station could conceivably be thought to be an errand for Ferguson's benefit, but if that was his original motive in taking the car keys in the first instance, he had obviously conceived a different purpose before the moment of the accident. I cannot credit his testimony that he was unable to find a parking place in Richmond at 7:00 o'clock on a Sunday morning within three-quarters of a mile of his point of departure.

Ferguson's statement to the plaintiff that Ferguson was insured does not seem to be of significance. In the absence of any evidence that Ferguson had read or understood the provisions of the insurance policy, the statement can hardly be considered an admission that he had consented to Grant's use of the car. Clearly, no such inference can be drawn which would be strong enough to override the testimony of Ferguson and Grant to the contrary.

No purpose would be served by discussing the Virginia cases at length. The most that can be said for them, from plaintiff's point of view, is that in some of them a question of fact was presented. In this case, as trier of the fact, I find, upon all the evidence, that Grant was on an expedition of his own at the time of the accident and that he had no permission, express or implied, from Ferguson to drive the car. I conclude, therefore, that Grant was not an insured within the meaning of the policy and that consequently, defendant is not bound by the Virginia judgment against Grant.

In view of this conclusion, it becomes unnecessary to consider whether, if Grant were the insured, his failure to comply with the conditions of the policy would offer any defense to defendant.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

Defendant's motion to dismiss the action for lack of jurisdiction is denied.

Defendant's motion made at the close of the entire case to dismiss the complaint is granted. The Clerk is directed to enter judgment in favor of defendant. So ordered.